[892 NYS2d 410]

MAHMOUD DIARASSOUBA, Appellant, v WILLIAM P. URBAN et al.,
Defendants, and SPENCER LUBIN et al., Respondents.

Second Department, December 15, 2009

### APPEARANCES OF COUNSEL

*Gersowitz Libo & Korek, P.C. (Pollack, Pollack, Isaac & De Cicco,* New York City [*Conrad Jordan* and *Brian J. Isaac*] of counsel), for appellant.

*Morris Duffy Alonso & Faley,* New York City (*Barry M. Viuker* of counsel), for respondents.

### OPINION OF THE COURT

BELEN, J.

When the plaintiff's counsel in this medical malpractice action attempted to place a settlement on the record, the trial court directed him to do so after the jury verdict was taken. Defense counsel said nothing when the plaintiff's counsel tried to make this record of the settlement. When the verdict was rendered for an amount far in excess of the proposed settlement—nearly 10 times as much—defense counsel predictably moved to enforce the settlement, and the plaintiff's counsel said there was nothing to enforce. The court granted the motion of the defendants Spencer Lubin and Kentaro Horiuchi (hereinafter together the defendants) to enforce the settlement.

The issue presented on this appeal is whether the Supreme Court's refusal to permit the terms of a settlement to be placed on the record prior to the taking of the jury's verdict constitutes error, and, in effect, renders the purported settlement unenforceable. We answer this question in the affirmative.

In this medical malpractice action, the plaintiff, Mahmoud Diarassouba, seeks review of an order of the Supreme Court enforcing an alleged stipulation of settlement with the defend-

ants. At the close of the parties' summations, the court gave instructions to the jury, and the jury then retired to begin deliberations. Shortly thereafter, the jury requested a read-back of certain testimony, which was provided, and the jury once again retired to deliberate.

While the court was in recess and the jury was deliberating, Conrad Jordan, counsel for the plaintiff, communicated to the defendants' counsel, Barry M. Viuker, that his client had authorized him to accept a settlement offer in the sum of $150,000. Viuker provided no confirmation of the settlement, but rather asked, "Do we have a settlement?" Jordan responded that he accepted the settlement offer. Viuker proceeded to leave the room for several minutes, without having responded in any way to Jordan's statement. The defense counsel's question, "Do we have a settlement?" was his only and final mention of the settlement agreement until after the court took the jury's verdict.

During Viuker's absence from the courtroom, Jordan informed the court clerk that the parties had reached a settlement, although he did not provide a specific settlement amount. The clerk did not record this information, but said that he would inform the Judge, who was already on her way to the courtroom to read a new jury note. Viuker then returned to the courtroom. When the Judge arrived at the courtroom, Viuker inquired, off the record, as to the contents of the jury note. The Judge responded that the jury had reached a verdict. Once again, Viuker left the room for a short while.

When Viuker returned, Jordan asked the court to memorialize the settlement on the record prior to taking the verdict, but the court refused Jordan's requests.

> "MR. JORDAN: Could I put my request on the record?
>
> "THE COURT: Once I have a verdict, I take the verdict, and then the parties are free to do what they agreed to. An agreement is an agreement, counsel.
>
> "MR. JORDAN: Why can't we put the agreement to settle the case for $150,000 on the record?
>
> "THE COURT: Because I said what I have to say. Let's proceed."

Viuker was silent throughout this whole exchange.

The verdict was then taken in the plaintiff's favor, finding that Dr. Lubin and Dr. Horiuchi were each 35% at fault for the

plaintiff's injury. The jury awarded the plaintiff the sum of $800,000 for past pain and suffering and the sum of $650,000 for future pain and suffering over 30 years.

After hearing the jury verdict, Jordan asserted that the purported stipulation of settlement was invalid on the ground that the court never permitted the settlement terms to go on the record. Jordan further posited that the settlement was invalid on the ground that the defense never consented to the settlement, but rather, was completely silent throughout Jordan's requests to put the settlement on the record.

> "THE COURT: Now [that the verdict has been taken], Mr. Jordan, what is it that you would like to say?

> "MR. JORDAN: Now, your Honor, what I will report for the record is that I attempted to talk to the Court about settlement and I watched the defense attorney, while he heard that there was a quick verdict, go outside twice. I heard him come in, and while he was in this courtroom he did nothing to second my application to this Court to put a settlement on the record and the Court did nothing to ask the parties whether there's a settlement on the record. As far as I know, the caselaw is there has to be a settlement on the record to be binding. So, at this point, the position of the plaintiff is that there is not [a] settlement, and there was no settlement."

Thereafter, by order dated March 28, 2008, the Supreme Court granted the defendants' motion to enforce the purported stipulation of settlement. The court determined that the settlement had been made in open court, with the Judge on the bench and the court reporter and court clerk in attendance. As such, the court found that it was not necessary for the stipulation to have been placed on the record. The plaintiff appeals. We reverse.

CPLR 2104, the law governing settlements, sets forth that

> "[a]n agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed to by him or his attorney or reduced to the form of an order and entered. With respect to stipulations of settlement and notwithstanding the form of the stipulation of settlement, the terms of such stipulation

shall be filed by the defendant with the county clerk."

Thus, a settlement agreement is valid only if both parties stipulate to the settlement in a written agreement or it is made in open court and placed on the record.

Although stipulations of settlement are favored by the courts and not lightly cast aside (*see Matter of Galasso,* 35 NY2d 319, 321 [1974]; *Hallock v State of New York,* 64 NY2d 224, 230 [1984]), the threshold issue here is whether there was an enforceable settlement agreement pursuant to CPLR 2104. The claim by the defendants and the finding of the Supreme Court was that this settlement agreement was made in open court. The definition of "open court" is often determinative on the issue of whether the parties agreed to a settlement. The Court of Appeals has defined open court as "a judicial proceeding in a court, whether held in public or private, and whether held in the court house, or a courtroom, or any place else, so long as it is, in an institutional sense, a court convened, with or without a jury, to do judicial business" (*Matter of Dolgin Eldert Corp.,* 31 NY2d 1, 4-5 [1972]). In addition to an agreement among the parties, courts require a formal entry of some kind, onto the stenographic record, or elsewhere, even "if only in the clerk's minutes, to memorialize the critical litigation events" (*id.* at 10; *see Kalomiris v County of Nassau,* 121 AD2d 367, 368 [1986]; *Graffeo v Brenes,* 85 AD2d 656 [1981]; *Deal v Meenan Oil Co.,* 153 AD2d 665 [1989]).

Relying on this definition, courts have held that notations on trial calendars or records indicating a settlement do not comport with the requirements of CPLR 2104 (*see Avaltroni v Gancer,* 260 AD2d 590 [1999]; *Lamuraglia v New York City Tr. Auth.,* 255 AD2d 365 [1998]; *Johnson v Four G's Truck Rental,* 244 AD2d 319 [1997]). Other insufficient notations include those in a clerk's docket card (*see Kalomiris v County of Nassau,* 121 AD2d at 368), as well as those in a court's personal file (*see Phillips v Pamper Decorating Serv.,* 228 AD2d 425 [1996]; *Zambrana v Memnon,* 181 AD2d 730 [1992]). If not reduced to a writing signed by the parties or in an order, the open court requirement also is not satisfied in locations without a justice presiding (*see Kushner v Mollin,* 144 AD2d 649 [1988]), and it is not satisfied during less formal stages of litigation, such as a pretrial conference (*see Gustaf v Fink,* 285 AD2d 625 [2001]).

The Court of Appeals also has held that open-court settlement agreements are not enforceable unless they are definite

and complete (*see Matter of Dolgin Eldert Corp.*, 31 NY2d at 9 [stating the assumption that the agreement at issue was definite and complete, since that is a prerequisite to being enforceable under CPLR 2104]; *Kalomiris v County of Nassau*, 121 AD2d at 368 ["Moreover, the agreement reached in open court must have definite terms"]). This requires that all material terms of the settlement be presented (*see Bonnette v Long Is. Coll. Hosp.*, 3 NY3d 281, 285 [2004] ["(C)orrespondence from the (defendant) hospital forwarding the settlement papers (did not) constitute( ) a sufficient writing to bring the agreement within the scope of CPLR 2104 . . . because the hospital's letters . . . d(id) not incorporate all the material terms of the settlement"]; *see also Matter of Galasso*, 35 NY2d at 321), and that there exists clear mutual accord between the parties (*see Bonnette v Long Is. Coll. Hosp.*, 3 NY3d at 286 ["(I)t becomes all the more important that they (settlements) be clear, final and the product of mutual accord"]; *Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584, 589 [1999] ["To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms"]; *see also Joseph Martin, Jr., Delicatessen v Schumacher*, 52 NY2d 105, 109 [1981]).

The open-court exception to CPLR 2104 was created in order to codify the previously existing practice of enforcing oral stipulations that were made in open court in the course of judicial proceedings (*see Matter of Dolgin Eldert Corp.*, 31 NY2d at 9). Notably, these oral stipulations were recorded by some type of formal entry (*id.*). Extending the open-court exception of CPLR 2104 beyond its intended purpose, so as to include settlements that are not formally recorded on the court record or elsewhere, would create "issues of fact and credibility among the parties, the presiding Justice, and the court clerk" (*id.* at 10). As a result, it would not only become more difficult to ascertain the facts, but would also be detrimental to the integrity of the court and its litigation process (*id.*).

Extending the open-court exception of CPLR 2104 beyond its intended purpose would also cause an uncontrollable cascade of collateral litigation over the alleged existence and terms of settlement agreements (*see Bonnette v Long Is. Coll. Hosp.*, 3 NY3d at 286). Such consequences would defeat the purpose of CPLR 2104, which is to reduce litigation by enforcing agreed upon settlements (*id.*). Furthermore, it would run counter to

the policies of "certainty, judicial economy, flexibility to conduct settlement negotiations without fear of being bound by preliminary offers and the prevention of fraud" (*id.*) that the courts so highly value.

The defendants contend that the settlement offer was made in open court pursuant to CPLR 2104, and thus, is binding. However, in fact, none of the requirements of the open-court exception to CPLR 2104 were met. " '[O]pen court' as used in CPLR 2104, is a technical term that refers to the formalities attendant upon documenting the fact of the stipulation and its terms" (*Popovic v New York City Health & Hosps. Corp.*, 180 AD2d 493, 493 [1992], citing *Matter of Dolgin Eldert Corp.*, 31 NY2d at 4-5). Thus, some form of written documentation is required if a settlement is made in open court. In this case, the settlement was never reduced to writing or entered onto the stenographic record. In fact, the court explicitly refused to place the settlement on the record, saying, "once I have a verdict, I take the verdict, and then the parties are free to do what they agreed to."

Notwithstanding the Supreme Court's assertion that "an agreement is an agreement," a settlement agreement must still be reduced to writing in order to have binding effect on the parties. For example, in *Van Syckle v Powers* (106 AD2d 711 [1984]), the attorneys made an oral settlement agreement and the defendant signed all the necessary documents. Before the plaintiff signed the documents, the plaintiff's attorney asked to hear the jury's verdict. The court informed the attorney that the verdict could not be heard if there already was a settlement and, consequently, the plaintiff's attorney disavowed the settlement. After the jury read its verdict, which was significantly in excess of the oral settlement agreement, the plaintiff refused to sign the settlement papers. The Appellate Division, Third Department, declined to enforce the purported settlement as it had not been agreed to in writing by both parties.

The plaintiff argues on appeal that his counsel's announcement of a settlement agreement functioned as an offer of settlement and that defense counsel was required to properly accept the offer. The plaintiff further contends that as a consequence of remaining silent in response to the plaintiff's offer, the defendants did not properly accept the offer and, thus, no settlement agreement was reached.

Stipulations of settlement are contracts and are, thus, subject to the rules of contract law (*see Lacorazza v Lacorazza*, 47 AD3d

897, 898 [2008]; *Chan v Barry,* 36 AD3d 579 [2007]; *Argento v Argento,* 304 AD2d 684 [2003]; *Jablonski v Jablonski,* 275 AD2d 692 [2000]). While it remains true that a party will receive relief from a stipulation made during litigation only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake, or accident (*see Chan v Barry,* 36 AD3d 579 [2007]; *Gage v Jay Bee Photographers,* 222 AD2d 648 [1995]; *Hallock v State of New York,* 64 NY2d at 230), there must still have been a proper, legal agreement ab initio.

In order to produce a legal contract, there must be an actual acceptance (*see More v New York Bowery Fire Ins. Co.,* 130 NY 537, 547 [1892]). Such acceptance must be clear and unequivocal (*see S.S.I. Invs. v Korea Tungsten Min. Co.,* 80 AD2d 155, 158 [1981]) and, thus, cannot be ambiguous, as was the alleged assent involved here. As such, a silence which breeds ambiguity cannot constitute acceptance (*see Gomez v Bicknell,* 302 AD2d 107, 116 [2002]). Assent can be manifested by words or circumstances, but a "mere determination of the mind unacted on can never be acceptance" (*Trevor v Wood,* 36 NY 307, 310 [1867]). In the words of Justice Holmes, "[a]ssent[,] in the sense of the law[,] is a matter of overt acts, not of inward unanimity in motives, design[,] or the interpretation of words" (*Sokoloff v National City Bank of N.Y.,* 239 NY 158, 170 [1924], quoting *O'Donnell v Town of Clinton,* 145 Mass 461, 463, 14 NE 747, 751 [1888], and citing *White v Corlies,* 46 NY 467 [1871]).

With respect to settlement agreements specifically, this Court ruled in *Maldonado v Novartis Pharms. Corp.* (40 AD3d 940 [2007]) that the preparation and filing of a one-sided "Disposition Form," having been signed by only one of the parties, was not a sufficient record to satisfy the requirements of CPLR 2104. Thus, a statement or document from one party, without the affirmation of the other party, is insufficient to constitute a settlement agreement. Here, the only words defense counsel said with regard to the settlement are "[d]o we have a settlement?" This question is ambiguous.

We reject the defendants' contention that although defense counsel remained silent throughout the plaintiff's requests to put the settlement on the record, his silence clearly communicated his assent to the settlement. This Court has previously held that absent a duty to speak, one party's silence does not constitute acceptance (*see Josephine & Anthony Corp. v Horwitz,* 58 AD2d 643 [1977]; *Gomez v Bicknell,* 302 AD2d 107, 116 [2002]; *see also Matter of Albrecht Chem. Co. [Anderson*

*Trading Corp.]*, 298 NY 437, 440 [1949]). The defendants argue that their duty to speak arose when the plaintiff's counsel attempted to place the settlement on the record, and that the defense counsel's silence thus indicated acceptance. However, a duty to speak generally arises only when the settlement is actually placed on the record, an event which did not occur here (*see generally Hallock v State of New York*, 64 NY2d at 231; *Owens v Lombardi*, 41 AD2d 438, 441 [1973]). Thus, there was no duty to speak. The defense counsel's silence, occurring in the absence of a duty to speak, was ambiguous and did not communicate acceptance.

The defendants rely on several cases to support their contention that defense counsel's silence manifested acceptance of the settlement. For example, the defendants cite *Matter of Beilstein* (65 AD2d 555 [1978]), in which this Court held that a settlement agreement was enforceable where one attorney remained silent, while the other attorney read the stipulation of settlement into the record. To begin with, *Beilstein* was a cursory, one-paragraph decision. Moreover, *Beilstein* is distinguishable from the present case in that in *Beilstein* one counsel remained silent, but appeared to be under a duty to speak because the opposing counsel read the stipulation of settlement into the record, a formality which did not occur here. The duty of the defense counsel in *Beilstein* to speak only ripened once the stipulation of settlement was being read into the record. Here, the settlement was never read into the record and, as a result, the duty of defense counsel to speak never ripened. Hence, the defense counsel's silence in the Supreme Court proceedings cannot be taken to signify acceptance.

Furthermore, in *Beilstein* this Court specifically advised against the course of action taken by the Supreme Court in the instant matter, saying, "when a settlement is being put on the record, the court should affirmatively require the assent of the parties instead of depending upon their silence." (*Id.*) Thus, the defendants at bar had specific warning of the issues that might arise and the losses they might incur if defense counsel simply remained silent throughout the plaintiff's request to place the settlement on the record.

The defendants also inappropriately rely on *Hallock* and its progeny (*see Wilson v Wilson*, 35 AD3d 595 [2006]; *Daniel D. Cole & Co. v 630 Corp.*, 150 AD2d 328 [1989]) to support their position that silence signifies acceptance. Those cases can be distinguished in that a complete stipulation was placed on the

record and the attorneys for all parties voluntarily consented to the terms. In this case, a stipulation was never actually placed on the record and the defendants never verbally agreed to the settlement.

In addition, the defendants' reliance on Restatement (Second) of Contracts § 69 (1) (b) to support their proposition that defense counsel's silence operated as acceptance is misplaced. Section 69 (1) (b) provides that silence only operates as acceptance "[w]here the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer." Here, the plaintiff presented no reason for defense counsel or the court to believe that defense counsel's silence indicated acceptance.

Restatement (Second) of Contracts § 69 (1) (c) also undermines the defendants' contention. Section 69 (1) (c) sets forth that silence only operates as acceptance "[w]here because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept." There is no evidence of such prior dealings between these parties which would indicate that silence operated as acceptance. Furthermore, several cases from the Court of Appeals and this Court specifically indicate that for an enforceable agreement to exist, all material terms must be set forth and there must be a manifestation of mutual assent (*see Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584, 589-590 [1999]; *Joseph Martin, Jr., Delicatessen v Schumacher,* 52 NY2d at 109; *Matter of Beilstein,* 65 AD2d at 555; *Bonnette v Long Is. Coll. Hosp.,* 3 NY3d at 285-286).

Factually, the record is clear that the plaintiff's counsel tried to enter the settlement into the record twice and was rebuffed by the court each time. He also advised the court clerk that he wished to place a settlement on the record. Throughout these attempts defense counsel remained silent and never confirmed that a settlement had been reached or that he supported the plaintiff's requests to place the settlement on the record. Despite the Supreme Court's assertions that the settlement could not be recorded and that its procedure was to take the verdict and then allow the parties to stipulate to a settlement, this procedure does not conform to the requirements of CPLR 2104. Nor does the Supreme Court's statement that "an agreement is an agreement" operate as confirmation of a settlement agreement. Stated simply, if the parties agree to settle a case, that

settlement should be entered on the record before a jury verdict is taken.

In sum, the Supreme Court erred in issuing an order enforcing the purported stipulation of settlement. The purported stipulation of settlement was not properly entered into according to CPLR 2104. Defense counsel's silence could not operate as acceptance of the settlement agreement and, thus, an enforceable contract was never created.

Accordingly, the order is reversed, on the law, and the defendants' motion to enforce a stipulation of settlement purportedly made in open court pursuant to CPLR 2104 is denied.

RIVERA, J.P., ANGIOLILLO and ENG, JJ., concur.

Ordered that the order is reversed, on the law, with costs, and the motion of the defendants Spencer Lubin and Kentaro Horiuchi to enforce a stipulation of settlement purportedly made in open court pursuant to CPLR 2104 is denied.